**Joseph MOORE, Plaintiff,**

v.

**DELAWARE RIVER PORT AUTHORITY et al., Defendants.**

**No. 97–4650 (JBS).**

United States District Court, D. New Jersey.

June 24, 1999.

Teri S. Lodge (Poplar & Eastlack, P.A.), Turnersville, NJ, for Plaintiff.

Peter A. Gold and Jonathan M. Korn (Blank Rome Comisky & McCauley LLP), Cherry Hill, NJ, for Defendant.

## OPINION

SIMANDLE, District Judge.

This matter is before the court on the motion of defendant, the Delaware River Port Authority ("DRPA"), for summary judgment, pursuant to Federal Rule of Civil Procedure 56(b). Plaintiff, Joseph Moore, claims that the DRPA wrongfully discharged him from employment in breach of its published Work Rules, which Moore contends created an implied contract of employment. The DRPA argues that, as a bi-state agency created by interstate compact between the State of New Jersey and the Commonwealth of Pennsylvania pursuant to the Commerce Clause of Article I of the Constitution, it is not subject to the common law of New Jersey and, therefore, that it is entitled to summary judgment on Moore's common law breach of contract and wrongful discharge claims. The principal issue to be decided on this motion is whether the common law of New Jersey regarding implied contracts of employment is "substantially similar in nature" to that of Pennsylvania so as to be enforceable against the DRPA. Because the court finds that it is not, the DRPA cannot be subject to the common law of New Jersey on this claim, and the court grants the DRPA's motion for summary judgment and dismisses plaintiff's Complaint.

## BACKGROUND

The DRPA was created in 1931 when the State of New Jersey and the Commonwealth of Pennsylvania entered into an interstate compact ("the Compact") pursuant to the Compact Clause of Article I of the Constitution to form the Delaware Joint Commission ("the Joint Commission"). N.J.S.A. 32:3–1, *et seq.*; Pa. Stat. Ann. Tit. 36 § 3503, *et seq.* Congress duly approved the Compact in 1932. Pub. Res. No. 26, Chapter 258, 47 Stat. 308 (1932).

The purpose of the Joint Commission was to construct, operate and maintain interstate transportation routes between New Jersey and Pennsylvania. *See* N.J.S.A. 32:3–2; Pa.Stat.Ann.Tit. 36 § 3501, Article I. The Joint Commission was authorized to build bridges, establish connective roads and provide transportation services within the Delaware Port District. *Id.*

In 1951, New Jersey and Pennsylvania agreed to change the name of the Joint Commission to the Delaware River Port Authority.

In April 1976, the DRPA hired Moore as a union electrician. In 1986, the DRPA promoted Moore to the non-union supervisory position of Assistant Foreman. Upon his promotion. Moore ceased to be covered by the collective bargaining agreement between the Electrician's Union and the DRPA. In 1993, the DRPA made Moore a Foreman when it eliminated the position of Assistant Foreman.

Moore's duties as a Foreman in the Electrical Department consisted of supervising electricians and assigning work. Except for a relatively brief period from sometime in 1993 or 1994 through November or December of 1995, when Moore was assigned to work at the Walt Whitman Bridge, Moore worked at the Ben Franklin Bridge.

By letter dated March 12, 1997, the DRPA notified Moore that he had been suspended with pay pending an internal investigation for allegedly violating certain DRPA Work Rules. By letter dated April 17, 1997, the DRPA detailed the allegations against Moore and the factual findings of its investigation and notified Moore that a pre-disciplinary hearing would be held on April 22, 1997. Donald A. Piccoli, Manager of the Betsy Ross Bridge, presided over the hearing on April 22, 1997, at which time Moore was provided with a Notification and Explanation of Charges that formally set forth the allegations against him and advised him of his right to appeal any adverse employment determination in accordance with the DRPA's Open Door Policy.

By letter dated May 7, 1997, the DRPA advised Moore that he had been terminated from employment for violating certain DRPA Work Rules, which were identified with particularity in the letter.

On August 7, 1997, Moore commenced this action by filing a Complaint against the DRPA in the Superior Court of New Jersey, Law Division, Burlington County. In Count One of the Complaint, Moore alleges a wrongful discharge claim against the DRPA. In Count Two of the Complaint, Moore alleges a breach of contract claim against the DRPA. In Count Three of the Complaint, Moore alleges that he is entitled to an award of punitive damages. Moore seeks compensatory and punitive damages, interest, attorney's fees and costs of suit, reinstatement with back wages and benefits, and such other relief as the court deems appropriate.

On September 25, 1997, the DRPA removed Moore's case to this court under 28 U.S.C. §§ 1441 and 1446. The DRPA asserts the existence of federal question jurisdiction under 28 U.S.C. § 1331 because the case involves the interpretation of a Congressionally-approved interstate compact between the State of New Jersey and the Commonwealth of Pennsylvania under the Compact Clause of Article I of the Constitution.

On November 6, 1997, Moore stipulated to dismissal of his claim for punitive damages (Count Three). The DRPA now moves for summary judgment on the remaining claims asserted in the Complaint—Moore's common law wrongful discharge (Count One) and breach of contract (Count Two) claims.

## DISCUSSION

### A. Summary Judgment Standard

A court may grant summary judgment only when the materials of record "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). An issue is "genuine" if it is supported by evidence upon which a reasonable jury could return a verdict for the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A fact is "material" only if a dispute about it might affect the outcome of the suit under the governing substantive law. *Id.* In deciding whether a genuine issue of material

fact exists, the court must view the facts in the light most favorable to the non-moving party and extend all reasonable inferences to that party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986).

The moving party always bears the initial burden of demonstrating the absence of a genuine issue of material fact, regardless of which party ultimately would have the burden of persuasion at trial. *Celotex*, 477 U.S. at 323, 106 S.Ct. 2548. Once the moving party has met its opening burden, the non-moving party must identify, by affidavits or otherwise, specific facts showing that there is a genuine issue for trial. *Id.* at 324, 106 S.Ct. 2548. The non-moving party may not rest upon the mere allegations or denials of its pleadings. *Id.* "[T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Id.* at 322, 106 S.Ct. 2548. "When the record is such that it would not support a rational finding that an essential element of the non-moving party's claim or defense exists, summary judgment *must* be entered for the moving party." *Turner v. Schering–Plough Corp.*, 901 F.2d 335, 341 (3d Cir. 1990).

## B. Analysis

■ It is well settled that the DRPA, as a bi-state agency created by interstate Compact between the State of New Jersey and the Commonwealth of Pennsylvania, is not subject to the unilateral enforcement of either state's laws. *See Eastern Paralyzed Veterans Ass'n v. City of Camden*, 111 N.J. 389, 398, 545 A.2d 127 (1988)("neither creator state can unilaterally impose additional duties, powers or responsibilities upon the Authority [or its employees]")(quoting *Nardi v. Delaware River Port Auth.*, 88 Pa.Cmwlth. 558, 490 A.2d

949, 950 (1985)). The Supreme Court of New Jersey has recognized, however, that "a bi-state agency, such as the DRBA [or DRPA], is subject to the law of New Jersey when the agency's compact expressly provides for unilateral action, both states have adopted complementary or parallel legislation, or the agency has impliedly consented to the exercise of single-state jurisdiction." *International Union of Operating Engineers, Local 68, AFL–CIO v. Delaware River and Bay Auth.*, 147 N.J. 433, 446, 688 A.2d 569 (1997)("*Local 68*").

In *Ballinger v. Delaware River Port Auth.*, 311 N.J.Super. 317, 326–29, 709 A.2d 1336 (App.Div.1998), the Superior Court of New Jersey, Appellate Division, applied the three-pronged standard set forth in *Local 68* to determine whether New Jersey's Conscientious Employee Protection Act ("CEPA"), N.J.S.A. 34:19–1 through 19–8, is applicable to the DRPA. The case involved the consolidated appeals of two plaintiffs whose complaints alleging CEPA claims against the DRPA had been dismissed by different trial courts for failure to state a claim upon which relief could be granted.

The Appellate Division first examined the text of the Compact and quickly decided that it contained no express authorization for unilateral action under the CEPA statute. *Id.* at 326, 709 A.2d 1336.

The Appellate Division then engaged in a detailed comparison of the CEPA statute to its Pennsylvania counterpart, 43 Pa. Stat.Ann. §§ 1421–1428 ("the Whistleblower Law") "to determine whether they are complementary or parallel such that both legislatures intended for the laws to apply to DRPA." The court noted that "in order to be complementary and parallel the court must find the legislative acts of both states to be 'substantially similar' in nature" as well as "some agreement between the states that CEPA and the Whistleblower Law are intended to apply to DRPA." *Id.* at 326–27, 709 A.2d 1336 (citing *Eastern Paralyzed Veterans Ass'n*, 111 N.J. at 401–02, 545 A.2d 127). The court found

four differences between the statutes. First, CEPA covers both private and public employees while the Whistleblower Law applies only to public employees. *Id.* at 327, 709 A.2d 1336. Second, CEPA permits the filing of a civil action up to one year from the date of the alleged violation while the Whistleblower Law permits the filing of a civil action only within six months from the date of the alleged violation. *Id.* Third, CEPA permits the recovery of punitive damages while the Whistleblower Law does not. *Id.* at 328, 709 A.2d 1336. Fourth, CEPA provides for a jury trial while the Whistleblower Law does not. *Id.* The court found that these differences were "not insignificant" and that they "fully support the conclusion that CEPA and the Whistleblower Law are neither complementary nor parallel." *Id.* The court also found no evidence that the respective state legislatures intended for the statutes to apply to the DRPA. *Id.*

Finally, the Appellate Division considered whether the DRPA had impliedly consented to the exercise of single-state jurisdiction, which could be found if the DRPA "voluntarily cooperates with New Jersey in the exercise of jurisdiction or agrees to meet the requirement of CEPA." *Id.* The court found no evidence of implied consent. *Id.* at 329, 709 A.2d 1336.

Having found no express authority for unilateral action in the compact, no support for the contention that CEPA and the Whistleblower Law are "complementary and parallel," and no evidence of implied consent to the exercise of single-state jurisdiction, the Appellate Division held that CEPA is not applicable to the DRPA. *Id.* The court also held, however, that the trial courts erred in not permitting the plaintiffs to pursue common law claims for retaliatory discharge due to their assertion of CEPA claims in their respective complaints. *Id.* at 330–32, 709 A.2d 1336. Accordingly, the Appellate Division reversed the dismissal of one plaintiff's common law retaliatory discharge claims and the denial of the other plaintiff's motion to amend his complaint to add common law retaliatory discharge claims. In closing, the court noted that "a painstaking comparison of the common law of New Jersey and Pennsylvania, like the one we engaged in as to CEPA and [the] Whistleblower Law, will have to be undertaken [by the trial judge on remand] if DRPA contends that it is immune from such claims." *Id.* at 332, 709 A.2d 1336.

■■■ Under *Ballinger,* therefore, a plaintiff may pursue a common law claim against a bi-state agency like the DRPA if he or she establishes that the applicable common law of New Jersey is "substantially similar in nature" to that of Pennsylvania. In the present case. Moore has asserted New Jersey common law claims for wrongful discharge and breach of contract against the DRPA. Both claims are based on Moore's contention that the DRPA Work Rules constitute an implied contract of employment. Thus, the principal issue to be decided on this motion is whether the common law of New Jersey regarding implied contract of employment is "substantially similar in nature" to that of Pennsylvania. The court finds that it is not.

■■■ Under New Jersey law, "absent a clear and prominent disclaimer, an implied promise contained in an employment manual that an employee will be fired only for cause may be enforceable against an employer even when the employment is for an indefinite term and would otherwise be terminable at will." *Woolley v. Hoffmann–La Roche,* 99 N.J. 284, 285–86, 491 A.2d 1257, *modified,* 101 N.J. 10, 499 A.2d 515 (1985). "The key consideration in determining whether an employment manual gives rise to contractual obligations is the reasonable expectations of the employees." *Witkowski v. Thomas J. Lipton, Inc.,* 136 N.J. 385, 392, 643 A.2d 546 (1994).

■■■ Under Pennsylvania law, an employment manual "is enforceable against an employer if a reasonable person in the employee's position would interpret its provisions as evidencing the employer's in-

tent to supplant the at-will rule and be bound legally by its representations in the [manual]." *Small v. Juniata College*, 452 Pa.Super. 410, 682 A.2d 350, 353 (1996), *allocatur denied*, 689 A.2d 235 (Pa.1997)(citing *Ruzicki v. Catholic Cemeteries Assoc.*, 416 Pa.Super. 37, 610 A.2d 495 (1992)). However, the manual "must contain a clear indication that the employer intended to overcome the at-will presumption" to be enforceable against the employer as an implied contract of employment. *Id.* "[I]t is for the court to interpret the handbook to discern whether it contained evidence of the employer's intention to be bound legally." *Id.*

The contrast in these standards for determining whether an employment manual like the DRPA Work Rules creates an implied contract of employment lies in the perspective from which courts are directed to examine the document. Under New Jersey law, courts are required to give binding contractual effect to employment manual provisions that a reasonable employee would consider binding unless the employer clearly and prominently expresses an intention not to be bound; under Pennsylvania law, courts will not give binding contractual effect to employment manual provisions unless the employer affirmatively expresses an intention to be bound that would be so understood by a reasonable employee. Thus, New Jersey courts will find an implied contract of employment unless the employer expressly denies an intention to be bound in language sufficiently clear and prominent to negate any contrary impression the employment manual might create in the mind of a reasonable employee, while Pennsylvania courts will not find an implied contract of employment unless the employer reveals an affirmative intention to be bound that would be so understood by a reasonable employee.

This contrast is best illustrated by the manner in which New Jersey courts examine an employer's attempt to disclaim any perceived intent to be contractually bound by the provisions of an employment manu-

al and the absence of a corresponding analysis by Pennsylvania courts.

■ Under New Jersey law, "[t]he provisions of the manual concerning job security shall be considered binding unless the manual elsewhere prominently and unmistakably indicates that those provisions shall not be binding or unless there is some other similar proof of the employer's intent not to be bound." *Woolley*, 99 N.J. at 307, 491 A.2d 1257. An employer can overcome the implication that its employment manual constitutes an enforceable contract of employment by the inclusion in a very prominent position of an appropriate statement that there is no promise of any kind by the employer contained in the manual; that regardless of what the manual says or provides, the employer promises nothing and remains free to change wages and all other working conditions without having to consult anyone and without anyone's agreement; and that the employer continues to have the absolute power to fire anyone with or without good cause.

■ *Id.* at 309, 491 A.2d 1257. New Jersey courts demand strict compliance with the "clear and prominent disclaimer" standard set forth in *Woolley*. Thus, for example, in *Nicosia v. Wakefern Food Corp.*, 136 N.J. 401, 415–16, 643 A.2d 554 (1994), the Supreme Court of New Jersey concurred in the Appellate Division's finding that the disclaimer under review failed the *Woolley* prominence test in part because it was "not highlighted, underscored, capitalized, or presented in any other way to make it likely that it would come to the attention of an employee reviewing it." The court also found that the disclaimer, which provided that "[t]he terms and procedures contained herein are not contractual and are subject to change and interpretation at the sole discretion of the Company, and without prior notice or consideration to any employee," failed the *Woolley* clarity standard because it contained "confusing legalese" instead of "straightforward terms" and did not adequately convey that "the employer, despite

the discipline and termination provisions of its manual, reserved the absolute power to fire anyone with or without cause without actually changing those provisions." *Id.* at 414, 643 A.2d 554 (citations and internal quotes omitted).

■ Under Pennsylvania law, on the other hand, an employer need not include a "clear and prominent disclaimer" of an intention to be bound to overcome the implication that its employment manual constitutes an enforceable employment contract. Indeed, no such implication will arise under Pennsylvania law unless the employer reveals an affirmative intention to be bound. *See Reilly v. Stroehmann Bros. Co.,* 367 Pa.Super. 411, 532 A.2d 1212, 1214 (1987), *allocatur granted,* 520 Pa. 577, 549 A.2d 137 (1988)("A handbook, to be construed as a contract, must contain unequivocal provisions that the employer intended to be bound by it and, in fact, renounced the principle of at-will employment"); *Martin v. Capital Cities Media, Inc.,* 354 Pa.Super. 199, 511 A.2d 830, 842 (1986), *allocatur denied,* 514 Pa. 643, 523 A.2d 1132 (1987)( "A reasonable employee may be presumed to regard [employee] handbooks as having legally binding contractual significance when the handbook, or oral representations about the handbook, in some way clearly state that it is to have such effect"). Thus, for example, in *Luteran v. Loral Fairchild Corp.,* 455 Pa.Super. 364, 688 A.2d 211, 215 (1997), *allocatur denied,* 549 Pa. 717, 701 A.2d 578 (1997), the court affirmed the trial court's dismissal of a wrongful discharge claim based the termination provision of an employee handbook that provided, "You may only be discharged for just cause," holding that "[s]ince the handbook contained no language indicating that it was to be a legally binding contract, we cannot find that it was the intention of the employer to form a contract." The court did not discuss the apparent absence of any disclaimer of an intent to be bound.

In light of this significant difference in the manner in which New Jersey and Pennsylvania courts examine employment manuals to determine whether they constitute implied contract of employment, this court finds that New Jersey common law regarding implied contract of employment is not "substantially similar in nature" to that of Pennsylvania. Accordingly, the court holds that Moore cannot maintain his common law wrongful discharge and breach of contract claims against the DRPA and grants the DRPA's motion for summary judgment.

Although the common law doctrines of New Jersey and Pennsylvania regarding implied contract of employment differ substantially as found above, this court will consider, for the sake of completeness, whether there is an area of at least partial intersection of these doctrines whereby DRPA could be held liable under both New Jersey and Pennsylvania common law. As discussed above, the common law of New Jersey overlaps with the common law of Pennsylvania in recognizing an implied contract of employment, including procedures for termination, if an employee handbook can reasonably be regarded as containing obligations undertaken by the employer. Under either state's common law, for example, a handbook expressing an employer's intent to be bound will create an implied contract as to the promises made. The common law diverges on the rule of construction applied to disclaimers contained in the handbook, as noted, since New Jersey's requirement of a clear and prominent disclaimer is not found in Pennsylvania law. Where clear disclaiming language is in fact present, as in the instant case, the plaintiff can only succeed against DRPA under the intersection of these doctrines if both New Jersey and Pennsylvania common law can be satisfied in all essential elements.

Stated differently, if plaintiff could not maintain his claim for breach of implied contract and wrongful termination under Pennsylvania law, then it is clear he cannot succeed in holding DRPA liable at the "intersection" of New Jersey and Pennsyl-

vania common law, as required if plaintiff is to succeed in this case.

■■■ The DRPA Work Rules contain no statement implying the employer's intent to be bound, let alone a clear indication that the employer intended to do so, as required by Pennsylvania law. *See Luteran,* 688 A.2d at 215; *Ruzicki,* 610 A.2d at 497. Moreover, the DRPA has clearly disclaimed any intent to create a binding contract of employment in the Work Rules, stating in the fourth paragraph of the Work Rules as follows:

> These Rules are not intended and shall not be construed to constitute any part of an individual contract of employment and may not be reasonably relied on for such purposes. Neither shall they be deemed to exclude DRPA's lawful rights to discipline employees for any other cause.

(Korn Aff., Ex. G.) The grievance and dispute provision of the Work Rules provides that a non-represented employee, such as Mr. Moore, "may consult with their supervisor and submit an appeal in accordance with the provisions of the Supervisor's Manual, Series 424, 'Open Door Policy.'" (*Id.*)

A glance at the Supervisor's Manual likewise reveals a clear, concise and prominent disclaimer, which provides as follows in upper-case letters:

> EXCEPT WITH RESPECT TO REPRESENTED EMPLOYEES AND EMPLOYEES WHO HAVE WRITTEN INDIVIDUAL EMPLOYMENT CONTRACTS, EMPLOYMENT AT THE DRPA IS TERMINABLE AT ANY TIME, WITH OR WITHOUT CAUSE, BY EITHER THE EMPLOYEE OR THE EMPLOYER. NO REPRESENTATIVE OR EMPLOYEE OF THE DRPA HAS ANY AUTHORITY TO ENTER INTO ANY CONTRACT OR AGREEMENT TO THE CONTRARY. THIS SUPERVISORS MANUAL IS NOT INTENDED AND SHALL NOT BE CONSTRUED TO CONSTITUTE ANY PART OF AN INDIVIDUAL CONTRACT OF EMPLOYMENT AND MAY NOT BE RELIED ON BY ANY EMPLOYEE FOR SUCH PURPOSE.
> THIS MANUAL CONTAINS NO PROMISES.
> EXCEPT FOR WAGES AND WORKING CONDITIONS NEGOTIATED WITH REPRESENTED EMPLOYEES AND EMPLOYEES WHO HAVE WRITTEN INDIVIDUAL EMPLOYMENT CONTRACTS, THE DRPA REMAINS FREE TO CHANGE WAGES AND ALL OTHER WORKING CONDITIONS WITHOUT HAVING TO CONSULT ANYONE AND WITHOUT ANYONE'S PRIOR AGREEMENT.
> THE DRPA, IN ITS SOLE DISCRETION, RESERVES THE RIGHT TO DEVIATE WITH OUR WITHOUT NOTICE FROM ANY RULE OR DIRECTIVE NOW OR HEREAFTER CONTAINED IN THIS MANUAL.

(Korn Aff., Ex. H.) Again, the Supervisor's Manual contains precisely the sort of disclaimer that states that the handbook does not contain any promises affecting the employee's at-will employment, erecting "an insurmountable burden" against the argument that the handbook converts the at-will employee to one who can only be fired for good cause. *See Reilly,* 532 A.2d at 1214; *see also Violanti v. Emery Worldwide ACF Co.,* 847 F.Supp. 1251, 1258 (M.D.Pa.1994); *Ruccolo v. BDP International,* 1996 WL 735575 (D.N.J. Mar.25, 1996). Under these facts, no reasonable juror could find that DRPA intended to provide contractual protections from termination to Mr. Moore, an at-will employee. Because the common law of Pennsylvania would provide no relief under these circumstances, there is no further necessity to examine whether New Jersey common law might do so. Under the DRPA Compact, the DRPA cannot be liable for common law liability unless it is subject to, and liable under, the common law of both Pennsylvania and New Jersey.

In summary, this court holds that the DRPA is not subject to common law liability for breach of an implied employment contract arising from an employment manual or for wrongful termination under such an implied contract because the law of New Jersey and of Pennsylvania on these subjects is not substantially similar in nature. Alternatively, to the extent that any such similarity exists at the intersection of New Jersey and Pennsylvania common law, no reasonable juror could find that the DRPA Work Rules or Supervisor's Manual created any implied contractual rights in favor of plaintiff because of the clear disclaimers contained therein.

## *CONCLUSION*

For the reasons set forth above, the court holds that the DRPA is not subject to the common law of New Jersey regarding implied contract of employment and, therefore, that the DRPA is entitled to summary judgment on Moore's common law wrongful discharge (Count One) and breach of contract (Count Two) claims. The accompanying Order is entered, and the complaint will be dismissed.

## **ORDER**

THIS MATTER having come before the court on the motion of defendant, the Delaware River Port Authority ("DRPA"), for summary judgment, pursuant to Federal Rule of Civil Procedure 56(b), and the court having considered the submissions of the parties, and for the reasons set forth in the accompanying Opinion;

IT IS on this day of June, 1999, hereby ORDERED that the DRPA's motion for summary judgment is GRANTED and that plaintiff's Complaint is DISMISSED WITH PREJUDICE.