

2002 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

11-19-2002

# IUOE Local 542 v. DE River Joint Toll

Precedential or Non-Precedential: Precedential

Docket No. 02-1210

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2002

Recommended Citation

"IUOE Local 542 v. DE River Joint Toll" (2002). *2002 Decisions*. Paper 750.
http://digitalcommons.law.villanova.edu/thirdcircuit_2002/750

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2002 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

PRECEDENTIAL

        Filed November 19, 2002

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 02-1210

INTERNATIONAL UNION OF
OPERATING ENGINEERS, LOCAL 542,
        Appellant

v.

DELAWARE RIVER JOINT TOLL BRIDGE
COMMISSION

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 01-cv-04089)
District Judge: Honorable Garrett E. Brown, Jr.

Argued August 1, 2002

Before: ROTH, RENDELL and AMBRO, Circuit Judge s

(Filed: November 19, 2002)

        Regina C. Hertzig, Esq. [ARGUED]
        William T. Josem, Esq.
        Cassie R. Ehrenberg, Esq.
        CLEARY & JOSEM
        1420 Walnut Street, Suite 300
        Philadelphia, PA 19102
         Counsel for Appellant

        Warren B. Kasdan, Esq. [ARGUED]
        SCHWARTZ, TOBIA, STANZIALE,
        ROSENSWEIG & SEDITA
        22 Crestmont Road
        Montclair, NJ 07042
         Counsel for Appellee

OPINION OF THE COURT

RENDELL, Circuit Judge.

At issue is whether state law applies to a bi-state agency.
The International Union of Operating Engineers, Local 542,
petitioned for a court order compelling the Delaware River
Joint Toll Bridge Commission to comply with New Jersey
collective bargaining laws. In granting summary judgment
to the Commission, the District Court held that neither New
Jersey nor Pennsylvania collective bargaining laws apply
because the state legislatures have not expressed a clear
intent to impose their labor laws upon the Commission. We

will affirm.

I. Background

Under the Compact Clause, Article I, Section 10, Clause 3 of the United States Constitution, states may enter into agreements regarding matters of common concern provided they obtain the consent of Congress.1 In 1934, the legislatures of New Jersey and Pennsylvania created the Delaware River Joint Toll Bridge Commission (the "Commission") to operate certain bridges spanning the Delaware River. N.J. Stat. Ann. S 32:8-1 (West 2002); Pa. Stat. Ann. tit. 36 S 3401 (West 2002). The Commission was consented to by act of Congress the following year. 49 Stat. 1051, 1058 (1935). The Compact has since been amended by the states, which amendments have been approved by Congress. The most current version is dated March 1986.

_____

1. The Compact Clause states, "No State shall, without the Consent of Congress enter into any Agreement or Compact with another State." U.S. Const. art. I, S 10, cl.3.

2

The Commission's powers and duties are framed entirely by the Compact. The Compact has been carefully crafted to provide for joint governance by commissioners from both states, requiring a majority of the commissioners from Pennsylvania and a majority of the commissioners from New Jersey to agree to any action. N.J. Stat. Ann.S 32:8-1, Art. I; Pa. Stat. Ann. tit. 36 S 3401, Art. I. The commissioners are charged with administering, operating, and maintaining numerous bridges and port facilities, acquiring and constructing additional facilities, fixing tolls and issuing bonds to raise funds, and procuring the consent of Congress whenever necessary. Id. Most pertinent to our purposes, under Article II of the Compact, the Commission's powers include the authority:

> "(f) To appoint such other officers, agents and employees as it may require for the performance of its duties.

> (g) To determine the qualifications and duties of its appointees, and to fix their compensation.

> (h) To enter into contracts." Id.

The Compact is entirely silent regarding the rights of Commission employees to collectively bargain and the duty of the Commission to collectively bargain with unions. The Compact also contains no provision regarding procedures for its amendment, or, especially relevant here, enabling the states to modify it by passing legislation that is"concurred in" by the other state.

In June 2001, the International Union of Operating Engineers, Local 542, ("Local 542") advised the Commission

that a majority of the full-time and regular part-time toll collectors, maintenance employees, bridge officers, and tellers employed by the Commission had selected Local 542 as their exclusive representative for collective bargaining purposes. The Commission refused to recognize Local 542 as the employees' representative, explaining that the Compact does not confer upon Commission employees the right to organize. Local 542 then petitioned a New Jersey state court to order a union election pursuant to the New Jersey Employer-Employee Relations Act, N.J. Stat. Ann. S 34:13A-1 et seq. (West 2002), and the Pennsylvania Public

Employee Relations Act, Pa. Stat. Ann. tit. 43 S 1101.101 et seq. (West 2002).2 (JA6a). Both acts provide for an election among public employees to determine whether they wish to be represented by a labor union and require public employers to bargain collectively with the selected union.3 Id. Neither act specifically states that it applies to the Commission or is intended to amend the Compact.

The Commission removed the case to the U.S. District Court for the District of New Jersey. Both parties moved for summary judgment. Local 542 argued that New Jersey and Pennsylvania's "complementary and parallel" employee relations acts effectively amended the Compact and therefore require the Commission to engage in collective bargaining. The Commission countered that a bi-state compact cannot be modified unless both state legislatures expressly state an intention to alter the compact. In an oral opinion, the District Court granted summary judgment in favor of the Commission. Local 542 appeals.

II. Jurisdiction and Standard of Review

The construction of a bi-state compact that has been consented to by Congress pursuant to the Compact Clause presents a federal question. Cuyler v. Adams, 449 U.S. 433, 438 (1981). When Congress sanctions a compact between two states, it turns the agreement into a "law of the Union," Pennsylvania v. Wheeling & Belmont Bridge Co., 54 U.S. (13 How.) 518, 566 (1852), the interpretation of which"involves a federal 'title, right, privilege, or immunity." Del. River Joint Toll Bridge Comm'n v. Colburn, 310 U.S. 419, 427 (1940) (quoting 28 U.S.C. S 344 (now 28 U.S.C. S 1257(a) (2002)). Because the compact here presents a federal question, the

---

2. Ordinarily, when a New Jersey union wants to organize a public employer, it is required to file a petition with the New Jersey Public Employment Relations Commission ("PERC"). N.J. Stat. Ann. S 34:13A-5.4e (West 2002). However, the New Jersey Supreme Court has ruled that PERC does not have jurisdiction over a bi-state entity. Int'l Union of Operating Eng'rs, Local 68 v. Del. River & Bay Auth. , 688 A.2d 569, 574 (N.J. 1997).

3. Neither party argues that the Commission should be deemed a "public employer" under either states' laws, nor do we think that it is.

District Court had jurisdiction under 28 U.S.C.S 1331, and we exercise jurisdiction pursuant to 28 U.S.C. S 1291.

Summary judgment is appropriate where "there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). The District Court's grant of summary judgment is subject to plenary review. Bailey v. United Airlines, 279 F.3d 194, 198 (3d Cir. 2002); Gritzer v. CBS, Inc., 275 F.3d 291, 296 (3d Cir. 2002).

III. Discussion

In creating the Delaware River Joint Toll Bridge Commission, New Jersey and Pennsylvania agreed to"the power sharing, coordination, and unified action that typify Compact Clause creations." Hess v. Port Auth. Trans-Hudson Corp., 513 U.S. 30, 41 (1994). Bi-state entities like the Commission are intended to address "interests and problems that do not coincide nicely . . . with State lines." Id. at 40 (quoting V. Thursby, Interstate Cooperation: A Study of the Interstate Compact 5 (1983)). They are to be regarded not as extensions of each compacting state's authority, but rather as "independently functioning parts of a regional polity and of a national union." Id. (quoting Grad, Federal-State Compact: A New Experiment in Cooperative Federalism, 63 Colum. L. Rev. 825, 854-55 (1963)). By compacting together to form the Commission, New Jersey and Pennsylvania have each surrendered a portion of their sovereignty over certain Delaware River bridge operations in order to better serve the regional interest. Such a surrender of state sovereignty should be treated with great care, and the Supreme Court has stated that courts should not find a surrender unless it has been "expressed in terms too plain to be mistaken." Jefferson Branch Bank v. Skelly, 66 U.S. 436, 446 (1861).

Our role in interpreting the Compact is, therefore, to effectuate the clear intent of both sovereign states, not to rewrite their agreement or order relief inconsistent with its express terms. Texas v. New Mexico, 462 U.S. 554, 564-65 (1983) (declining to alter the voting structure of the Pecos River Commission to break an impasse); see also New

Jersey v. New York, 523 U.S. 767, 811 (1998) (declining to redraw the boundary between New Jersey and New York for reasons of practicality and convenience). Although we understand the desire to bring the Commission under the auspices of New Jersey and Pennsylvania's employee relations acts, we conclude that to do so would be an act of legislation, rather than interpretation or enforcement. We can find no legislative intent to subject the Compact to the collective bargaining schemes of New Jersey or

Pennsylvania. We will therefore affirm the District Court's grant of summary judgment.

A. The Legal Landscape

Local 542 urges that states may amend a bi-state compact by passing legislation that is substantially similar, without an express statement, either in the legislation or otherwise, that they intend to apply that law to the bi-state entity. This issue has been treated differently by different courts. In nearly every one of these cases, courts have been presented with a compact that addresses the issue of modification by including language enabling one state to modify the compact through legislation "concurred in" by the other. See, e.g., Pa. Stat. Ann. tit. 36S 3503, Art. IV(e) (West 2002) (Delaware River Port Authority); N.Y. Unconsol. Law S 6408, Art. VII (West 2002) (Port Authority of New York and New Jersey). Here, the Compact contains no "concurred in" language. Nonetheless, an overview of the relevant case law in this area assists in understanding the issue before us.

The most notable difference of opinion regarding the interpretation of "concurred in" language is between the courts of New York and those of New Jersey. New York courts have interpreted the "concurred in" language in a compact to permit application of states' laws to the compact if the states' legislation contains an express statement that they intend to amend the compact. New Jersey courts have held that this language will be effective to apply the states' laws that are "complementary or parallel" even where there is no stated intent to amend the compact. Federal courts, including those in our circuit, have at various times adopted both approaches.

6

    i. New York View

The New York standard was most clearly articulated by the Court of Appeals of New York in Malverty v. Waterfront Commission of New York Harbor, 524 N.E.2d 421, 422 (N.Y. 1988). In Malverty, the petitioner sought to apply New York Corrections Law to the Waterfront Commission of New York Harbor, a bi-state agency established by New York and New Jersey and approved by Congress. Id. at 421. The compact creating the Waterfront Commission included authorization "to amend and supplement the Interstate Compact, to implement the purposes thereof, by legislative action of either State concurred in by legislative action of the other State." Id. at 422. The Malverty court found "the absence from the text and legislative history of [the Corrections Law] of any reference to the Waterfront Commission, coupled with the absence of an express statement that the Legislature was amending or supplementing the provisions of the 'Compact' and that [the Corrections Law] would take effect upon the enactment by New Jersey of legislation of identical effect," to indicate that the New York legislature had never intended the Corrections Law to apply to the

Waterfront Commission. Id. The court noted,"That the two States have evinced the same, or similar, public policy regarding employment opportunities for former inmates by enacting similar 'antidiscrimination' laws is not sufficient under the express terms of the 'Compact' to render it properly amended or supplemented such that the Commission would be subject to the provisions of[New York's Corrections Law]." Id. (citations omitted). It thus viewed the "concurred in" language to require an express statement to that effect.

### ii. New Jersey View

New Jersey courts have taken a different tack, finding the passage of similar legislation by compacting states to satisfy the "concurred in" test and be sufficient to imply an intent on the part of both states to apply the legislation to a bi-state entity. Bunk v. Port Auth. of New York & New Jersey, 676 A.2d 118, 122 (N.J. 1996). In Bunk, the court applied New Jersey's workers' compensation laws to the Port Authority of New York and New Jersey, a bi-state

entity whose compact contains "concurred in" language, without examining whether either state had expressly intended its workers' compensation laws to apply. The court reasoned that the "corollary of the proposition that neither state may unilaterally impose its legislative will on the bi-state agency is that the agency may be subject to complementary or parallel legislation." Id. (citing Eastern Paralyzed Veterans Ass'n v. Camden, 545 A.2d 127 (1988)). The court then examined New York and New Jersey's workers' compensation laws and found them "somewhat similar." Id. According to the New Jersey view, then, a state may meet the requirements of "concurring in" the other's legislation merely by passing a somewhat similar statute of its own.

### iii. Federal Courts

Federal courts have followed both lines of reasoning when interpreting compacts containing "concurred in" language. Courts in the Second Circuit have uniformly adopted the express intent standard, finding the New York view"more in line with the language" of the compacts before them. Baron v. Port Auth. of New York & New Jersey, 968 F. Supp. 924, 929 (S.D.N.Y. 1997) (declining to unilaterally impose New York's human rights laws on the New York and New Jersey Port Authority where there was no evidence that either state intended its anti-discrimination laws to apply). See also Dezaio v. Port Auth. of New York & New Jersey, 205 F.3d 62, 65 (2d Cir. 2000) (same); Rose v. Port Auth. of New York & New Jersey, 12 F. Supp. 2d 516, 523 (S.D.N.Y. 1998) (stating that the same or similar public policy of two states is not sufficient to impose law of either state on the agency unless legislation "expressly mentions the bi-state entity"); Settecase v. Port Auth. of New York & New Jersey, 13 F. Supp. 2d 530, 535-36 (S.D.N.Y. 1998)

("[I]f New York and New Jersey intend their own . . . laws to apply to the Port Authority, they have the means to do so clearly and expressly, as they have done for other laws.").

Within our circuit, however, the district courts have espoused both views. The District Court for the District of New Jersey has applied the New Jersey complementary or

parallel standard. Moore v. Del. River Port Auth., 80 F. Supp. 2d 264, 268 (D.N.J. 1999) (citing Int'l Union of Operating Eng'rs, Local 68 v. Del. River & Bay Auth. , 688 A.2d 569 (N.J. 1997)). In Moore, the court refused to apply New Jersey common law regarding wrongful discharge and breach of contract to the Delaware River Port Authority, a bi-state entity whose compact includes "concurred in" language. Id. at 271. In arriving at that result, however, the court analyzed whether the common law of New Jersey was substantially similar to the common law of Pennsylvania, bypassing any discussion as to what was required in order for a law of one state to be "concurred in" by the other.

In contrast, in Delaware River Port Authority v. Fraternal Order of Police, Penn-Jersey Lodge 30, 135 F.Supp.2d 596, 609 (E.D.Pa. 2001), rev'd on other grounds, Delaware River Port Authority v. Fraternal Order of Police, Penn-Jersey Lodge 30, 290 F.3d 567 (3d Cir. 2002), Judge Robreno in the District Court for the Eastern District of Pennsylvania recently noted that "as a general rule of statutory interpretation, surrenders of sovereignty are to be strictly construed in terms of their scope," Id. at 603, concluding that "the ambiguous term 'concurred in' of[the Delaware River Port Authority compact should] be interpreted to require the express consent of both legislatures before additional duties are imposed" upon the bi-state entity. Id. at 604. The court further noted that the weight of authority supported the express intent standard, and that the New Jersey complementary or parallel standard was based on a misreading of the law of compacts. Id. at 604-05. The court went on to hold that because neither New Jersey nor Pennsylvania had expressly stated that they intended to impose their collective bargaining laws on the Delaware River Port Authority, they had not "concurred in" the application of those laws. Id. at 609.

On appeal, we did not reach the merits of Judge Robreno's ruling, or of either the New York express intent or the New Jersey complementary or parallel views, but reversed on different grounds, concluding that the parties' litigation involved an attack on a New Jersey judgment entitled to preclusive effect. Lodge 30, 290 F.3d at 572 (discussing Fraternal Order of Police, Penn-Jersey Lodge 30

v. Del. River Port Auth., 733 A.2d 545 (N.J. Super. Ct.

1999)). The parties to the Lodge 30 litigation were in privity with the parties in a case resolved in the New Jersey courts; we were therefore required to give preclusive effect to the New Jersey court's ruling regarding the complementary or parallel test.4Id. at 577. In dicta, however, we noted, "Were we sitting on the New Jersey courts, we might have interpreted the respective statutes and the DRPA's obligations to its patrol officers differently. But we may not reconsider the New Jersey judgment."5 Id.

### iv. Bridge Commission Compact Before Us

The cases discussed above all address the interpretation of bi-state compacts that expressly authorize the compacting states to amend the compact through legislation "concurred in" by the other. As we have noted, the Compact before us contains no such language, nor did the relevant laws of each state evince an intent to apply to the Compact as such. The only case to address a bi-state compact in a similar setting is International Union of Operating Engineers, Local 68 v. Delaware River & Bay Authority, 688 A.2d 569 (N.J. 1997). In Local 68, the New Jersey Supreme Court held that New Jersey and Delaware's collective bargaining laws were complementary and parallel with regard to collective negotiations for public employees and therefore applied to the Delaware River and Bay Authority. Id. at 576. The court so held in spite of the fact

---

4. The fact that Lodge 30 involved the interpretation of a bi-state compact, a question of federal law, by a state court made no difference to our preclusion analysis. As Judge Scirica explained:

> "State courts may answer federal questions. The unions and the DRPA agreed to litigate this issue of federal law in New Jersey courts. If those courts answered federal questions erroneously, it remained for state appellate courts, and ultimately for the United States Supreme Court, to correct any mistakes." Lodge 30, 290 F.3d at 576.

5. Recently, the New Jersey Supreme Court characterized our ruling in Lodge 30 as having endorsed New Jersey's view that express statements are not required to modify bi-state compacts. Ballinger v. Del. River Port Auth., 800 A.2d 97, 102 (N.J. 2002). We do not read our ruling as having reached the merits issue.

that the compact did not clearly authorize modification through legislation "concurred in" by both states, and neither New Jersey nor Delaware had expressed any intent to amend the compact or apply state labor laws to the Authority.6 The court found that because both states had a public policy endorsing collective bargaining, the legislatures had "in effect . . . modified the Compact." Id.

Here, Local 542 urged before the District Court that Local 68 was controlling and persuasive, but the Court rejected its reasoning. The District Court reviewed the New York and

New Jersey views and the federal case law, and found that the New Jersey view has not been accepted as a matter of federal law. The District Court also considered Local 542's argument that the lack of "concurred in" language in the Compact provides a basis to distinguish it from, and therefore a basis to reject, the New York and Second Circuit approaches. But the District Court concluded that"rather than distinguishing those, it substantially weakens[Local 542]'s position, because absent concurred in, there would be no basis, whatsoever, to look to any parallel legislation." Since there had been "no showing that either the New Jersey or the Pennsylvania statutes were intended, by the legislatures, to be applicable to this particular commission," the court awarded summary judgment to the Commission.

Having reviewed the state of the law on this issue, we agree with the District Court that, given the facts of this case and the unique nature of this Compact, New Jersey and Pennsylvania have not exhibited any express intent to amend the Compact or apply their collective bargaining laws to the Commission's employees. We are persuaded, first, by the fact that the Compact does not contain any provision enabling either state to modify it through legislation "concurred in" by the other, and second, by the

_____

6. Curiously, earlier in the same opinion, the New Jersey Supreme Court held that the New Jersey PERC does not have jurisdiction over the Delaware River and Bay Authority because "[s]uch jurisdiction 'must be expressly given to the [PERC] by the Legislatures of New Jersey and Delaware, and not inferred by the courts.' " Local 68, 688 A.2d at 574. This view does not appear consistent with the court's later holding applying New Jersey and Delaware labor laws to the Authority when no expression of intent was present.

11

logic of the reasoning underpinning the New York express intent standard, which the District Court here found to be persuasive.

First, we can find no language in the Compact authorizing New Jersey and Pennsylvania to permit amendment of the terms of their agreement simply by each states' passing similar legislation. Judicial restraint dictates that we not divine a way for them to do so. Our"first and last order of business is interpreting the compact," Texas, 462 U.S. at 567-68; we may not read into it language or intent that is simply not there. Principles of statutory interpretation also require us to strictly construe surrenders of sovereignty. As noted above, a party wishing to make a claim of right or entitlement against a state must prove that the state has expressly relinquished that measure of sovereignty "in terms too plain to be mistaken." Skelly, 66 U.S. at 446.

Neither New Jersey nor Pennsylvania has expressed any intent to allow the modification of this Compact through the passage of legislation concurred in by the other, let

alone legislation of one state that bears a resemblance to the other. We cannot subscribe to the view espoused by the New Jersey Supreme Court in Local 68 that the mere existence of similar public policies set forth in each state's collective bargaining laws is enough to imply an intent on the part of both states to amend the Compact and apply those laws to the Commission. Nor do we agree with Local 542 that the absence of a provision enabling the states to modify the Compact through legislation "concurred in" by the other means that no express intent is required. Rather, we agree with the District Court that the absence of "concurred in" language actually weakens Local 542's argument. This is because the "concurred in" provision introduces the issue of, and mechanism for, modification, without which there is absolutely no authority for, let alone specific means of accomplishing, a modification of the Compact by passing similar laws.7 Thus the absence of the

---

7. We do not need to reach the issue of whether the presence of "concurred in" language would be a sufficient demonstration of intent nor whether Congress would also have to consent to any modifications. Judge Roth is of the opinion that in the case of a bi-state compact that contains no provision for amendment, Congressional consent to any modification would be required.

12

"concurred in" language is fatal. We find that in this case New Jersey and Pennsylvania have not expressed any intent to amend the Compact. We will not amend it for them.

We find further support for our decision in the observation made by Judge Robreno in his Lodge 30 opinion, that the New Jersey complementary or parallel standard appears to be based on a misinterpretation of compact law. The New Jersey Supreme Court based the complementary or parallel test articulated in Local 68 and Bunk on Eastern Paralyzed Veterans Association, Inc. v. Camden, 545 A.2d 127 (N.J. 1988) and Nardi v. Delaware River Port Authority, 490 A.2d 949 (Pa. Commw. Ct. 1985). See Local 68, 688 A.2d at 575; Bunk, 676 A.2d at 122. A closer reading of these two cases, however, reveals that neither stands for the proposition that express legislative intent is unnecessary.8 Rather, both cases lend further support to the New York express intent test governing the application of the "concurred in" language, asking first whether the two states have passed legislation that expressly applies to the bi-state entity, and then whether that legislation is substantially similar. See Malverty, 524 N.E.2d at 422.

In Nardi, the Pennsylvania Commonwealth Court examined Pennsylvania and New Jersey's employee benefits laws, both of which expressly stated that they applied to the Delaware River Port Authority (the bi-state agency at issue), to determine whether they were substantially similar. Nardi, 490 at 950-51. The court found that the

laws were not identical and refused to apply either one. Id. at 952. Similarly, in Eastern Paralyzed, the court refused to unilaterally impose New Jersey's Uniform Construction Code on the Delaware River Port Authority -- even though the code expressly stated that it applied to all bi-state agencies -- without "some showing of agreement by both states to the enforcement of the [Code]." Eastern Paralyzed, 545 A.2d at 133-34.

_____

8. New Jersey Supreme Court Justice Garibaldi expressed similar concerns in her strongly worded dissent in Local 68. See Local 68, 688 A.2d at 576-77 (finding the majority's result "an unwarranted expansion of the dicta in Eastern Paralyzed") (citation omitted).

Principles of federalism further caution against inferring an intent to amend in this case. A bi-state entity, created by compact, is "not subject to the unilateral control of any one of the States that compose the federal system." Hess, 513 U.S. at 42. Also, although Pennsylvania courts have not spoken on this specific issue, they have noted reluctance to equate the state's individual action with action on behalf of, or that binds, a bi-state agency. See, e.g., Aveline v. Penn. Bd. of Probation & Parole, 729 A.2d 1254, 1257 n.10 (Pa. Commw. Ct. 1999) (a compact "takes precedence over the subsequent statutes of signatory states and, as such, a state may not unilaterally nullify, revoke or amend one of its compacts if the compact does not so provide") (citing Jill E. Hasday, Interstate Compacts in a Democratic Society: The Problem of Permanence, 49 Fla. L. Rev. 1 (1997)); Nardi, 490 A.2d at 950 ("neither creator state can unilaterally impose additional duties, powers, or responsibilities upon [a bi-state agency]").

Looking to the relevant statutes and the plain language of the Compact, we find no intent on the part of either state legislature to amend the Compact and impose collective bargaining laws upon the Commission. The Compact grants the Commission the authority to appoint employees, determine their qualifications and duties, and fix their salaries. N.J. Stat. Ann. S 32:8-1, Art. II (f)-(h); Pa. Stat. Ann. tit. 36 S 3401, Art. II (f)-(h). The Compact neither gives Commission employees the right to bargain collectively nor imposes any requirement on the Commission to bargain collectively with employee unions. Neither New Jersey nor Pennsylvania's collective bargaining laws mention the Commission or state that the legislation is intended to apply to bi-state agencies. To read into the Compact any collective bargaining requirements would be to rewrite the agreement between the two states without any express authorization to do so. That is simply not our role.

IV. Judgment

For the reasons given, we will affirm the District Court's grant of summary judgment to the Commission. We leave it to the legislatures of New Jersey and Pennsylvania to

amend the Compact and apply their collective bargaining laws to the Commission, should they choose to do so.

A True Copy:
Teste:

      Clerk of the United States Court of Appeals
      for the Third Circuit