**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-2458
_____

WATERFRONT COMMISSION OF NEW YORK
HARBOR

v.

GOVERNOR OF NEW JERSEY,
                              Appellant

PRESIDENT OF THE NEW JERSEY STATE
SENATE; SPEAKER OF THE NEW JERSEY
GENERAL ASSEMBLY;
NEW JERSEY SENATE;
GENERAL ASSEMBLY OF
THE STATE OF NEW JERSEY,
                              Intervenors

_____

No. 19-2459
_____

WATERFRONT COMMISSION OF NEW YORK
HARBOR

v.

GOVERNOR OF NEW JERSEY


GENERAL ASSEMBLY OF THE STATE OF NEW
JERSEY; SPEAKER OF THE NEW JERSEY
GENERAL ASSEMBLY;
NEW JERSEY SENATE;
PRESIDENT OF THE NEW JERSEY STATE SENATE,
Intervenor-Defendants/Appellants
_____

On Appeal from the United States District Court
for the District of New Jersey
District Court No. 2-18-cv-00650
District Judge: The Honorable Susan D. Wigenton
_____

Argued March 3, 2020

Before: SMITH, *Chief Judge*, HARDIMAN, and
KRAUSE, *Circuit Judges*

(Filed: June 5, 2020)


2

Alychia L. Buchan
Proskauer Rose
One Newark Center
18th Floor
Newark, NJ  07102

Sean R. Kelly            [ARGUED]
Catherine Soliman
Saiber
18 Columbia Turnpike
Suite 200
Florham Park, NJ  07932

Lawrence R. Sandak
Proskauer Rose
11 Times Square
17th Floor
New York, NY  10036
    *Counsel for Waterfront Commission of New York*
    *Harbor*

Aaron A. Love            [ARGUED]
Gurbir S. Grewal
Melissa H. Raksa
Christopher Edwards
Office of Attorney General
  of New Jersey
Division of Law
25 Market Street

3

Richard J. Hughes Justice Complex
Trenton, NJ  08625
    *Counsel for Governor of New Jersey*

Leon J. Sokol              [ARGUED]
Steven Siegel
Cullen & Dykman
433 Hackensack Avenue
Hackensack, NJ  07601
    *Counsel for President of the New Jersey State
    Senate; Speaker of the New Jersey General
    Assembly; New Jersey Senate; and General
    Assembly of the State of New Jersey*

A. Matthew Boxer
Joseph A. Fischetti
Rebecca J. Ryan
Lowenstein Sandler
One Lowenstein Drive
Roseland, NJ  07068
    *Counsel for Amicus New York Shipping
    Association, Inc.*

Jeffrey B. Litwak
Columbia River Gorge Commission
57 N.E. Wauna Avenue
P.O. Box 730
White Salmon, WA  98672
    *Counsel for Amicus Columbia River Gorge*

4

*Commission*

_____

OPINION OF THE COURT

_____

SMITH, *Chief Judge.*

The States of New Jersey and New York agreed more than half a century ago to enter into the Waterfront Commission Compact. More recently, New Jersey enacted legislation to withdraw from the Compact. To prevent this unilateral termination, the Waterfront Commission sued the Governor of New Jersey in federal court. But because New Jersey is the real, substantial party in interest, its immunity should have barred the District Court from exercising subject-matter jurisdiction. Accordingly, this case must be dismissed.

## I

### A

By the mid-twentieth century, New York Harbor was rife with corruption, particularly in waterfront hiring practices. *See De Veau v. Braisted*, 363 U.S. 144, 147–48 (1960) (plurality opinion); *N.Y. Shipping Ass'n v. Waterfront Comm'n of N.Y. Harbor*, 835 F.3d 344, 348–

49 (3d Cir. 2016).  After studying the problems created by corrupt practices, representatives of New Jersey and New York prepared remedial legislation, which each State enacted in 1953.  *See* N.J. Stat. Ann. § 32:23-1 *et seq.* (repealed 2018); N.Y. Unconsol. Law § 9801 *et seq.* Because the reciprocal statutes collectively function as an agreement between the States, Congress consented to the formation of the Waterfront Commission Compact, consistent with the Compacts Clause in Article I, § 10, of the U.S. Constitution.[1]  Act of Aug. 12, 1953, Pub. L. No. 83-252, 67 Stat. 541, 541.

The Compact reformed waterfront hiring practices by, *inter alia*, introducing registration and licensing requirements and channeling hiring through designated centers.  *E.g.*, N.Y. Unconsol. Law §§ 9812, 9827, 9853. To implement such reforms, the Compact also established the Waterfront Commission of New York Harbor, §§ 9807, 9810, and authorized the Commission to fund its operations by levying assessments on employers, § 9858.[2]

[1] Article I, § 10, cl. 3, provides in pertinent part that "[n]o State shall, without the Consent of Congress, . . . enter into any Agreement or Compact with another State."

[2] Although the States could designate funding for the Commission (and the Commission may receive financial support from "federal grants or otherwise"), the Compact contemplates that the bulk of the budget would come from

6

**B**

As the decades passed, most of the Harbor workforce shifted from New York to New Jersey, where deepwater berths better accommodated the modern trend toward containerized shipping. Such developments redounded to the benefit of New Jersey's economy. Eventually, the New Jersey legislature came to see the Commission as "over-regulat[ing] the businesses at the port in an effort to justify its existence," which made the Commission "an impediment to future job growth and prosperity at the port." N.J. Stat. Ann. § 32:23-229.

New Jersey repeatedly tried to cabin the Commission's powers, and even to withdraw from the Compact entirely. Those efforts came to fruition at the end of Governor Chris Christie's term in office, when he signed into law Chapter 324. Act of Jan. 16, 2018, 2017 N.J. Sess. Law Serv. ch. 324 (codified at, e.g., N.J. Stat. Ann. §§ 32:23-229 to -230). That chapter immediately repealed the New Jersey legislation that had contributed to the formation of the Compact. Ch. 324, §§ 33–34 (citing N.J. Stat. Ann. § 32:23-1 *et seq.*).

---

employer assessments. N.Y. Unconsol. Law §§ 9856, 9858. In fact, the Commission's funding allegedly consists entirely of such assessments.

But Chapter 324 set out additional steps intended to further the State's withdrawal from the Compact. It required the New Jersey Governor to notify Congress, the Governor of New York, and the Commission of the "intention to withdraw." § 2.a. That notification would initiate a ninety-day countdown to the "transfer date" when the Compact and the Commission would be "dissolved." §§ 3, 31. Thereafter, the New Jersey Division of State Police would assume the Commission's law enforcement functions on the New Jersey side of the Harbor. *See* §§ 1.d, 4.b, 34.

## C

The day after the outgoing Governor signed Chapter 324, the Commission filed suit in federal district court against New Jersey Governor Philip Murphy in his official capacity.[3] The one-count Complaint sought two forms of relief: a declaration that Chapter 324 violated the Compact and the Supremacy Clause of the U.S. Constitution, and an injunction against its enforcement. The District Court permitted the New Jersey Senate, Senate President, General Assembly, and Assembly Speaker (collectively, the "Legislature") to intervene in defense of Chapter 324.

---

[3] The parties disagree as to whether this suit was properly filed in the Commission's name. We need not resolve that dispute.

The Commission filed a motion for a preliminary injunction to prevent the Governor from effectuating withdrawal, while the Governor and Legislature moved for dismissal. The District Court denied dismissal and granted the injunction. Nearly a year later, the Court granted the Commission's motion for summary judgment and denied the separate motions of the Governor and the Legislature.

In these consolidated appeals, the Governor and Legislature challenge the District Court's orders denying dismissal, granting an injunction, denying them summary judgment, and granting summary judgment to the Commission.[4] Briefing included amicus curiae filings by the New York Shipping Association (NYSA) in support of the Governor and Legislature, and the Columbia River Gorge Commission in support of the Waterfront Commission.

## II

---

[4] We do not reach issues implicated in challenges by the Governor and Legislature to "all other orders and rulings adverse to" them. J.A. 2, 4.

9

The District Court had federal-question jurisdiction over this dispute because the Complaint invoked the Supremacy Clause and the Compact. *See* 28 U.S.C. § 1331; *Waterfront Comm'n of N.Y. Harbor v. Elizabeth-Newark Shipping, Inc.*, 164 F.3d 177, 180 (3d Cir. 1998) (observing that Congressional consent enshrined the Compact in federal law). But that jurisdiction does not extend to any claim barred by state sovereign immunity. *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 98, 119–21 (1984).

In denying the Governor's motion to dismiss, the District Court rejected the "suggest[ion]" that sovereign immunity applied to the Governor in this case. *Waterfront Comm'n of N.Y. Harbor v. Murphy*, No. 18-650 (SDW) (LDW), 2018 WL 2455927, at *4 (D.N.J. June 1, 2018). We have plenary authority to determine whether sovereign immunity deprived the District Court of jurisdiction.[5] 28

---

[5] Although the District Court did not revisit the sovereign immunity issue at summary judgment, the Legislature and amicus NYSA pursue that issue on appeal as a jurisdictional matter. We have jurisdiction over an appeal of an order granting summary judgment to address an underlying issue going to the District Court's jurisdiction. *See MCI Telecomm. Corp. v. Bell Atl.–Pa.*, 271 F.3d 491, 502–03 (3d Cir. 2001) (examining denial of sovereign immunity on appeal of summary judgment); *cf. Edelman v. Jordan*, 415 U.S. 651, 677–78 (1974) (observing "the

10

U.S.C. § 1291; *In re PennEast Pipeline Co.*, 938 F.3d 96, 103 (3d Cir. 2019), *petition for cert. filed*, No. 19-1039 (Feb. 18, 2020).

## III

State sovereign immunity dates back to our Nation's Founding, and is deeply rooted in English law. *See Franchise Tax Bd. of Cal. v. Hyatt*, 139 S. Ct. 1485, 1493–94 (2019); 1 William Blackstone, Commentaries on the Laws of England 234–35 (1765). Assurances that States would remain immune from federal suit—absent their consent—were instrumental in securing sufficient support for the Constitution's adoption. *Edelman v. Jordan*, 415 U.S. 651, 660 & n.9 (1974). Although the Eleventh Amendment expressly protects a State from federal suits by citizens of another State or country,[6] case law recognizes that the actual scope of immunity extends beyond the Amendment's text. *Alden v. Maine*, 527 U.S. 706, 727–28 (1999). As a rule, "federal courts may not

Eleventh Amendment defense sufficiently partakes of the nature of a jurisdictional bar so that it need not be raised in the trial court").

[6] "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. amend. XI.

entertain a private person's suit against a State" unless the State has waived its immunity or Congress has permissibly abrogated it. *Va. Office for Prot. & Advocacy v. Stewart*, 563 U.S. 247, 253–54 (2011) [hereinafter *VOPA*].

An "important limit" to that rule allows federal suits against state *officials* in certain circumstances. *Id.* at 254–55. Under the *Ex parte Young* doctrine, a state official is "stripped of his official or representative character" and thereby deprived of the State's immunity, *Ex parte Young*, 209 U.S. 123, 159–60 (1908), when he commits an "ongoing violation of federal law." *VOPA*, 563 U.S. at 254–55 (quoting *Verizon Md. Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002)). A person who is aggrieved may therefore seek prospective relief by suing him in his official capacity. *See id.* But *Ex parte Young*'s "authority-stripping theory . . . is a fiction that has been narrowly construed." *Pennhurst*, 465 U.S. at 114 n.25. *Ex parte Young* applies only to the "precise situation" of "a federal court command[ing] a state official to do nothing more than refrain from violating federal law." *VOPA*, 563 U.S. at 255.

Consistent with this narrow construction of *Ex parte Young*, the doctrine "does not apply 'when the state is the real, substantial party in interest.'" *Id.* (quoting *Pennhurst*, 465 U.S. at 101). Courts determine whether "relief sought nominally against an officer is in fact against the sovereign" based on whether the relief would

12

"operate against" the sovereign. *Pennhurst*, 465 U.S. at 101 (quoting *Hawaii v. Gordon*, 373 U.S. 57, 58 (1963) (per curiam)). In other words, we examine "the *effect* of the relief sought." *Id.* at 107. If such relief would operate against the State, then we forego the fiction of *Ex parte Young* in favor of the bedrock principle of state sovereign immunity.

The Supreme Court has been "willing to police abuses of the [*Ex parte Young*] doctrine that threaten to evade sovereign immunity" because the relief would operate against the State. *VOPA*, 563 U.S. at 256. A State is generally the real, substantial party in interest if the "judgment sought would expend itself on the public treasury or domain, or interfere with public administration," *id.* at 255 (quoting *Pennhurst*, 465 U.S. at 101 n.11) (internal quotation marks omitted), or if relief consists of "an injunction requiring the payment of funds from the State's treasury, or an order for specific performance of a State's contract," *id.* at 256–57 (citation omitted) (citing *Edelman*, 415 U.S. at 666–67; *In re Ayers*, 123 U.S. 443 (1887)).[7]

---

[7] Even if the relief would affect the State's treasury, the State may not be the real, substantial party in interest if the effect on the public fisc is merely "ancillary" to permissible prospective relief, as was the case in *Ex parte Young*. *Edelman*, 415 U.S. at 667–68.

The Court has concluded that the sovereign was the real, substantial party in interest in suits nominally against officials where relief would effectively force the restructuring of state mental health care at the State's expense, *see Pennhurst*, 465 U.S. at 93, 101 & n.11, 107; confer money damages for a State's disability benefit processing deficiencies, *see Edelman*, 415 U.S. at 655–56, 668–69; enjoin activity that would breach a State's contract, *see In re Ayers*, 123 U.S. at 502–03, 507; require substantial, unbudgeted expansion of a federal water project, *see Dugan v. Rank*, 372 U.S. 609, 610–11, 616, 620–21 (1963);[8] or quiet title to, and preclude state control of, territory within the State's regulatory jurisdiction, *see Idaho v. Coeur d'Alene Tribe of Idaho*, 521 U.S. 261, 281–82, 287–88 (1997) (permitting suit would be "as intrusive

---

[8] *Dugan* reached this conclusion as to claims against federal officials, but *Pennhurst* imported *Dugan*'s principles into an *Ex parte Young* suit against state officials. *See Pennhurst*, 465 U.S. at 101 n.11 (citing *Dugan*, 372 U.S. at 620); *see also Gordon*, 373 U.S. at 58 (suit against federal official was effectively against United States because prospective relief would, *inter alia*, "affect the public administration of government agencies" impacted by official's action).

14

as almost any conceivable retroactive levy upon funds in its Treasury").[9]

## IV

Here, the Commission does not directly challenge the general rule of state sovereign immunity. It simply chose not to name the State of New Jersey as a defendant in its Complaint. By naming the Governor instead, the Commission attempts to bring this case within the reach of *Ex parte Young*. That attempt is unavailing. Because the relief nominally sought from the Governor in this case would operate against the State itself, New Jersey is the real, substantial party in interest.[10]

---

[9] By contrast, the sovereign was *not* the real, substantial party in interest in suits against state officials to prevent enforcement of a State's railroad rate regulation, *see Ex parte Young*, 209 U.S. at 129–31, 159–60; secure access to a State's mental hospital records, *see VOPA*, 563 U.S. at 252, 256–57; or, as this Court decided, alter a state-approved agreement between competitors, *see MCI Telecomm.*, 271 F.3d at 514–15.

[10] Although we agree with the Legislature on this conclusion, we do not embrace the grounds upon which it argues for such an outcome. The Legislature contends that the Governor's enforcement duty was not sufficiently specific to permit an *Ex parte Young* action against him.

**A**

The Commission seeks a judgment that "would expend itself on the public treasury or domain." *VOPA*, 563 U.S. at 255 (quoting *Pennhurst*, 465 U.S. at 101 n.11).

---

Indeed, *Ex parte Young* suggests that we consider the nature of the state officer's duty to enforce a challenged law. *See* 209 U.S. at 157, 161. But we think the Governor has sufficiently specific statutory obligations that an *Ex parte Young* claim cannot be precluded on that basis.

Chapter 324 expressly requires the Governor to notify Congress, the New York Governor, and the Commission of New Jersey's impending withdrawal—which triggers the ninety-day countdown to consummation—and then tell the Legislature's presiding officers that he did so. §§ 2, 31. The Complaint objects to the Governor's "taking any action to implement or enforce" Chapter 324 and identifies the portion of the Governor's obligations that triggers the withdrawal countdown. J.A. 55–56, 67–68. For this reason, we are not persuaded we should dismiss on grounds that the suit alleges insufficiently specific obligations to make out an *Ex parte Young* claim. *Cf. Constitution Party of Pa. v. Cortes*, 824 F.3d 386, 396 (3d Cir. 2016) (recognizing ministerial duties are amenable to *Ex parte Young* claims).

16

The Complaint is frank in its recitation of the expected financial effects of Chapter 324 on the Commission:

> [Chapter 324] would take away the Commission's primary revenue stream. . . . [T]he Commission is not funded with tax dollars, and its budget derives entirely from the assessments that it collects from Port employers. Inasmuch as the vast majority of commercial Port operations occurs on the New Jersey side, [Chapter 324] – which purports to remove the Commission's authority to assess fees on New Jersey employers – will virtually eliminate the Commission's budget.

J.A. 69–70.

The Commission's dim prognosis is consistent with the text of Chapter 324. Whereas the Commission has been collecting assessments on work within New Jersey, Chapter 324 tabs those assessments for the budget of the New Jersey Division of State Police. *See* § 25.b. The result will be that those assessments will now flow into New Jersey's coffers: "Each employer shall pay to the State Treasurer, for placement within the General Fund, an assessment . . . ." *Id.*; *see also* § 26.a(10) ("All funds of the division received as payment of any assessment or penalty under this section shall be deposited with the State

17

Treasurer."). The same goes for the Commission's current liquid assets. Chapter 324 requires the Commission to deposit "the funds of the commission applicable to this State . . . into the custody of the State Treasurer." § 4.b(2). At bottom, Chapter 324 redirects the Commission's present and anticipated future funding from New Jersey employers into New Jersey's treasury.

This suit is no mere attempt to compel or forestall a state official's actions consistent with *Ex parte Young*'s holding. Rather, when we compare the Commission's allegations about Chapter 324 with the chapter's text, we observe that the Commission attempts to pry back its authority to assess employers, in direct conflict with Chapter 324's provisions. On these facts, where a judgment for the Commission would divert state treasury funding and thereby operate against the State,[11] we

---

[11] Even if the effect on New Jersey's treasury can be deemed ancillary to permissible prospective relief, *see supra* note 7, this suit falls beyond *Ex parte Young*'s bounds for the independent reason that it effectively seeks specific performance of the Compact.

Separately, we do not view our fact-specific holding to create tension with cases allowing suits to enjoin future taxation to proceed under *Ex parte Young*. *E.g.*, *CSX Transp., Inc. v. Bd. of Pub. Works of W. Va.*, 138 F.3d 537, 541–43 (4th Cir. 1998) (determining whether relief sought was prospective or retrospective, without commenting on

18

conclude that New Jersey is the real, substantial party in interest.

**B**

We reach the same outcome when considering this suit from a different angle: the Commission effectively seeks "specific performance of a State's contract." *VOPA*, 563 U.S. at 257.

Like other interstate compacts, the Waterfront Commission Compact is a contract subject to our construction. *Tarrant Reg'l Water Dist. v. Herrmann*, 569 U.S. 614, 628 (2013). Our inquiry begins with the Compact's express terms, *id.*, and we need go no further. Each State "deemed" the Compact's regulation of the waterfront "an exercise of the police power of the two states for the protection of the public safety, welfare, prosperity, health, peace and living conditions of the people of the two states." N.Y. Unconsol. Law § 9805. And the Commission is empowered to "administer and enforce" the Compact's regulations. § 9810. New

---

whether State was real, substantial party in interest). We have no occasion to take a position on that issue. Here we are faced with a suit seeking prospective relief that unquestionably operates against the State itself: The Commission has no quibble with the assessments continuing but wants to keep the revenue coming to its own account instead of New Jersey's.

19

Jersey's contractual performance therefore consists primarily of permitting the Commission to carry out regulation of hiring on the New Jersey side of the Harbor that otherwise falls within the State's police powers.

By enacting Chapter 324, the State of New Jersey has chosen to discontinue its performance of the Compact and to resume the full exercise of its police powers on its own side of the Harbor. Yet the Complaint seeks invalidation of Chapter 324. Granting this relief would compel New Jersey to continue to abide by the terms of an agreement it has decided to renounce. Such relief tantamount to specific performance would operate against the State itself, demonstrating that New Jersey is the real, substantial party in interest.

***

We are convinced that this suit seeks relief beyond the *Ex parte Young* doctrine's narrow confines by asking that we invalidate Chapter 324. Invalidation would necessarily have an adverse impact on the State of New Jersey's treasury and compel the State to perform consistent with the Compact.[12] Because such relief would

---

[12] *Cf. MSA Realty Corp. v. Illinois*, 990 F.2d 288, 289–90, 295 (7th Cir. 1993) (rejecting *Ex parte Young* claim that would effectively compel State to comply with its program

20

operate against New Jersey as the real, substantial party in interest, the State is entitled to the protection of sovereign immunity.[13]  Accordingly, we lack jurisdiction to address the other threshold concerns raised by the Governor and Legislature, nor can we reach the merits of New Jersey's anticipated withdrawal from the Compact.

## V

Because this suit impinges on the State of New Jersey's sovereignty, thereby depriving the District Court of jurisdiction, we will vacate the order granting summary judgment to the Commission, reverse the order denying the Governor's motion to dismiss, and vacate that order in all other respects.  The case will be remanded for dismissal.

---

promising return of state sales taxes to participating municipalities).

[13] New Jersey has not waived its immunity from this suit, nor has Congress abrogated it.  *See VOPA*, 563 U.S. at 253–54.

21