**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 20-1898
_____

DELAWARE RIVER JOINT TOLL BRIDGE
COMMISSION

v.

SECRETARY PENNSYLVANIA DEPARTMENT
OF LABOR AND INDUSTRY,
Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 2-19-cv-02978)
District Judge: Honorable Mark A. Kearney
_____

Argued on November 12, 2020


Before: HARDIMAN, SCIRICA, and RENDELL, *Circuit
Judges*

(Filed: January 12, 2021)

Thomas W. Nardi, Jr.
Jeffrey M. Scott **[Argued]**
Shelley R. Smith
Archer & Greiner
Three Logan Square
1717 Arch Street, Suite 3500
Philadelphia, PA 19103

    *Counsel for Appellee Delaware River Joint Toll Bridge
Commission*

Bruce P. Merenstein **[Argued]**
Schnader Harrison Segal & Lewis LLP
1600 Market Street
Suite 3600
Philadelphia, PA 19103

Darryl J. Liguori
Marsha A. Sajer
Pennsylvania Department of Labor & Industry
Office of General Counsel
651 Boas Street
10th Floor
Harrisburg, PA 17121

    *Counsel for Appellant Secretary Pennsylvania
Department of Labor and Industry*

_____

OPINION OF THE COURT
_____

HARDIMAN, *Circuit Judge.*

This dispute concerns an interstate compact between Pennsylvania and New Jersey that created the Delaware River Joint Toll Bridge Commission. The Commission obtained from the District Court a declaratory judgment that prohibited the Secretary of the Pennsylvania Department of Labor and Industry from regulating aspects of the Commission's new Scudder Falls Administration Building in Bucks County, Pennsylvania. The Secretary appeals, claiming the District Court erred by holding that Pennsylvania ceded its sovereign authority to enforce its building safety regulations when it entered into the Compact. We will affirm.

I

In 1934, the Pennsylvania and New Jersey legislatures enacted laws creating the Commission, which Congress approved in 1935 under the Compact Clause of the United States Constitution. *See* U.S. CONST. art. I, § 19, cl. 3. The Commission was tasked with, among other things, "the acquisition of toll bridges over the Delaware River," and "[t]he administration, operation, and maintenance" of such bridges. Act of Aug. 30, 1935, Pub. L. No. 74-411, § 9, 49 Stat. 1051, 1059.[1]

---

[1] The Compact has been amended several times since its creation in 1935; none of these amendments have altered the relevant language here. *See e.g.*, Federal Aid Highway Act of 1987, § 151, Pub. L. No. 100-17, 101 Stat. 132, 206. The Compact is also codified in Pennsylvania's and New Jersey's statutes. *See* 36 PA. CONS. STAT. § 3401; N.J. STAT. § 32:8-1 *et seq*.

To assist the Commission in the discharge of its duties, Pennsylvania and New Jersey granted it the power "[t]o acquire, own, use, lease, operate, and dispose of real property and interest in real property, and to make improvements thereon," as well as "[t]o determine the exact location . . . and all other matters in connection with, any and all improvements or facilities which it may be authorized to own, construct, establish, effectuate, maintain, operate or control." *Id.* at 1060. The Commission also was granted sweeping authority

> [t]o exercise all other powers . . . reasonably necessary or incidental to the effectuation of its authorized purposes or to the exercise of any of the powers granted to the commission . . . except the power to levy taxes or assessments for benefits; and generally to exercise, in connection with its property and affairs and in connection with property under its control, any and all powers which might be exercised by a natural person or a private corporation in connection with similar property and affairs.

*Id.* Since its creation, the Commission has "owned, constructed, operated, and maintained bridges between the two states under the Compact." *Del. River Joint Toll Bridge Comm'n v. Oleksiak*, -- F. Supp. 3d --, 2020 WL 1470856, at *2 (E.D. Pa. 2020).

The controversy giving rise to this appeal began in 2017, when the Commission undertook a project to replace the Scudder Falls Bridge that connects Bucks County, Pennsylvania with Mercer County, New Jersey. As part of that project, the Commission purchased ten acres of land near the bridge on the Pennsylvania side of the river and broke ground

4

on the Scudder Falls Administration Building, which would house the Commission's executive and administrative staff in a single location. A year later, inspectors with the Pennsylvania Department of Labor and Industry observed construction at the site, even though the Commission never applied for a building permit as required under the Department's regulations. The Department stated it would issue a stop-work order for want of a permit. The Commission responded that it was exempt from Pennsylvania's regulatory authority under the express terms of the Compact.

The Commission pushed forward and completed the Scudder Falls Administration Building. The Department eventually turned its attention to the Commission's elevator subcontractor, threatening it with regulatory sanctions for its involvement in the project.

Within weeks of the threat against its elevator subcontractor, the Commission filed a complaint against the Secretary in the District Court seeking declaratory and injunctive relief. The Commission sought a declaration that the Department lacked the authority to enforce Pennsylvania's building regulations (as well as its flammable and combustible liquid regulations) "absent express language in the Compact itself." Dist. Ct. Dkt. No. 1. It also sought a preliminary injunction to prevent the Secretary from enforcing the Department's regulations.

The District Court granted the Commission's preliminary injunction motion, enjoining the Secretary from directing the Department to "seek[] to inspect or approve the elevators in the . . . Scudder Falls Administrative Building or from further impeding, interfering or delaying the Plaintiff's

5

contractors or subcontractors from immediately repairing and activating the elevator systems." Dist. Ct. Dkt. No. 16, at 2.

After the District Court granted the preliminary injunction, the Secretary filed an answer and counterclaim for declaratory relief. The Secretary denied the Commission's claims that Pennsylvania lacked the power to enforce its building and safety regulations against the Commission. In the Secretary's view, Pennsylvania "reserved its regulatory power over certain property use matters as an exercise of its fundamental police powers to protect the health, safety and welfare of its citizens." Dist. Ct. Dkt. No. 17, at 24. Among the claimed reserved regulatory powers was the ability to enforce "critical safety-based laws applying to building construction, elevator construction, boiler installation and operation, and combustible and flammable liquid storage and dispensing." *Id.*

In February 2020, the parties filed cross-motions for summary judgment. As relevant here, the District Court granted the Commission's motion for declaratory relief, reasoning that "under the express terms of the . . . Compact creating the [Commission]," the Secretary "may not . . . unilaterally interfere, direct, inspect, or regulate" the Commission's "elevator operations" under the Pennsylvania Uniform Construction Code or the Commission's "tanks, pumps, and other fuel-dispensing devices" under the Department's Combustible and Flammable Liquids Act regulations, at the Scudder Falls Administration Building. Dist. Ct. Dkt. No. 67, at 2. The Secretary timely appealed.

II

The interpretation of a bi-state compact approved by Congress presents a federal question. *Int'l Union of Operating*

6

*Eng'rs, Local 542 v. Del. River Joint Toll Bridge Comm'n*, 311 F.3d 273, 275 (3d Cir. 2002) (citation omitted). The District Court had jurisdiction under 28 U.S.C. § 1331, and our jurisdiction lies under 28 U.S.C. § 1291. *Id.*

## III

The Secretary first claims the District Court lacked jurisdiction because the Commission's complaint was barred by the Eleventh Amendment to the United States Constitution. The Eleventh Amendment states: "The Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. CONST. amend. XI. Although the text of the Eleventh Amendment only explicitly mentions "Citizens of another State, or . . . Citizens . . . of any Foreign State," the Supreme Court has consistently held the scope of state immunity extends beyond the text of the Eleventh Amendment. *See, e.g.*, *Hans v. Louisiana*, 134 U.S. 1, 14–15 (1890) (holding the Eleventh Amendment bars suits against a state commenced by its own citizens); *Principality of Monaco v. Mississippi*, 292 U.S. 313, 330 (1934) (same as to foreign nations); *Blatchford v. Native Vill. of Noatak & Circle Vill.*, 501 U.S. 775, 779 (1991) ("[W]e have understood the Eleventh Amendment to stand not so much for what it says, but for the presupposition of our constitutional structure which it confirms."). As a general rule, "'federal courts may not entertain a private person's suit against a State' unless the State has waived its immunity or Congress has permissibly abrogated it." *Waterfront Comm'n of N.Y. Harbor v. Governor*

7

*of N.J.*, 961 F.3d 234, 238 (3d Cir. 2020) (quoting *Va. Off. for Prot. & Advoc. v. Stewart* (*VOPA*), 563 U.S. 247, 254 (2011)).[2]

Under a federal court's equitable powers, however, there is an important exception to this general rule: in certain circumstances, a plaintiff may bring a federal suit against state *officials*. *See Ex parte Young*, 209 U.S. 123 (1908). In such cases, state officials are stripped of their official or representative character and thereby deprived of the State's immunity when they commit an ongoing violation of federal law. *Waterfront Comm'n*, 961 F.3d at 238.

The legal fiction recognized in *Ex parte Young* is narrow in scope. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 114 n.25 (1984). It requires us to "conduct a straightforward inquiry into whether the complaint alleges an ongoing violation of federal law" and whether it "seeks relief properly characterized as prospective." *Verizon Md., Inc. v. Pub. Serv. Comm'n of Md.*, 535 U.S. 635, 645 (2002) (cleaned up).

The terms of the Compact adopted by Congress are federal law. *See Operating Eng'rs*, 311 F.3d at 275. By alleging the Secretary's actions would violate the Compact the Commission has alleged an ongoing violation of federal law.

---

[2] A state-created entity, such as the Commission, with the power "[t]o sue and be sued," Pub. L. No. 74-411, § 9, 49 Stat. at 1060, may bring an action against a state subject to the same Eleventh Amendment limitations as a private citizen. *See VOPA*, 563 U.S. at 256 ("[T]he validity of an *Ex parte Young* action [does not] turn on the identity of the plaintiff.").

The relief sought by the Commission—a declaration as to Pennsylvania's power to regulate the Scudder Falls Administration Building—is prospective. Just as the injunction upheld in *Ex parte Young* enjoined the Attorney General of Minnesota to conform his conduct with federal law (the Fourteenth Amendment), the relief sought here likewise requires the Secretary to conform his conduct to federal law (the Compact). *See Ex parte Young*, 209 U.S. 123, 145. In sum, the Commission's suit seeks prospective relief to prevent an ongoing violation of federal law by the Secretary. It falls squarely within the *Ex parte Young* exception to sovereign immunity.

The Secretary argues *Ex parte Young* does not apply because the Commonwealth of Pennsylvania, not the Secretary, is the real party in interest. We disagree. The relief sought—a declaration that the Secretary cannot lawfully enforce Pennsylvania's building regulations against the Commission—neither "expend[s] itself on the public treasury or . . . interfere[s] with public administration," nor operates as "an order for specific performance of a State's contract." *Waterfront Comm'n*, 961 F.3d at 239 (internal citations and quotation marks omitted).

First, the relief sought does not resemble a money judgment that interferes with public administration. While the declaratory judgment may have an impact on Pennsylvania's revenues (such as the loss of inspection fees), "[s]uch an ancillary effect on the state treasury is a permissible and often an inevitable consequence of the principle announced in *Ex parte Young*." *Edelman v. Jordan*, 415 U.S. 651, 668 (1974).

Second, the relief sought is not specific performance of a Pennsylvania contract. In arguing otherwise, the Secretary

9

relies heavily on our recent decision in *Waterfront Commission*. There, we overturned the District Court's order requiring New Jersey "to continue to abide by the terms of [a bi-state] agreement" after the State had taken the affirmative step of repealing its earlier legislation that had contributed to the formation of the compact. *Waterfront Comm'n*, 961 F.3d at 237, 241–42. Forcing New Jersey to abide by a compact it had expressly rejected through proper legislative channels, we held, was "tantamount to specific performance [that] would operate against the State itself." *Id.* at 241. Quite unlike that situation, here Pennsylvania did not seek to disavow the Compact. A declaratory judgment requiring the Secretary to respect the Compact as written does not constitute an impermissible order of specific performance—to hold otherwise would allow state officials to evade federal law by merely invoking the Eleventh Amendment.

Because the relief sought would neither drain public funds nor amount to "an order for specific performance of a State's contract," *Waterfront Comm'n*, 961 F.3d at 239, Pennsylvania is not the real party in interest; the Secretary is.

Having confirmed our jurisdiction, next we consider the scope of the powers Pennsylvania ceded under the Compact.

IV

The District Court found Pennsylvania unambiguously ceded some of its sovereign authority through the Compact. "[W]e review *de novo* the text of the Compact to determine whether we agree with the District Court that it is unambiguous." *Wayne Land & Min. Grp. LLC v. Del. River Basin Comm'n*, 894 F.3d 509, 528 (3d Cir. 2018). "[I]f we agree that the text is unambiguous, then we also review *de novo*

10

whether [the Secretary's] proposed activities . . . fall within the scope of the Compact's text." *Id.*

Our decisions in *Operating Engineers* and *HIP Heightened Independence & Progress, Inc. v. Port Authority* (*HIP*), 693 F.3d 345, 358 (3d Cir. 2012), two similar Compact Clause cases, guide our approach to the Compact here. In *Operating Engineers*, we were asked to determine whether New Jersey or Pennsylvania collective bargaining laws could be applied against the Commission. 311 F.3d at 274. We refused "[t]o read into the Compact any collective bargaining requirements" because the Compact's silence as to the authority of the States to enforce such laws did not amount to a grant of permission. *Id.* at 281. Mindful of the important "[p]rinciples of federalism" at issue, we held that, absent express language to the contrary, "[a] bi-state entity created by compact, is 'not subject to the unilateral control of any one of the States that compose the federal system.'" *Id.* (quoting *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 42 (1994)). To interpret the Compact otherwise "would be to rewrite the agreement between the two states without any express authorization to do so." *Id.* Now, as then, "[t]hat is simply not our role." *Id.*

Similarly, in *HIP* we considered a bi-state compact that created the Port Authority of New York and New Jersey, and addressed the power of New Jersey to apply its civil rights and construction laws to property of the Port Authority. *HIP*, 693 F.3d at 349. We declined to enforce New Jersey's statutes against the Port Authority even though the Compact lacked an "express surrender of state sovereignty regarding external relations." *Id.* at 358. Such an argument, we held, "misapprehends the notion of sovereignty surrender" discussed by the Supreme Court in *Hess* and this Court in *Operating*

11

*Engineers*. *Id.* Although "court[s] must be hesitant to find a surrender of sovereignty where it is ambiguous," the creation of a bi-state entity pursuant to the Compact Clause is an unambiguous surrender. *Id.* "By expressly creating the bi-state entity, [the compacting States] relinquished all control over the [entity] unless otherwise stated in the compact." *Id.* Here, as in *HIP*, the surrender of sovereignty was expansive and clear; Pennsylvania and New Jersey "relinquished *all* control over the [Commission]." *See id.* (emphasis added).

The specific language of the Compact also indicates that Pennsylvania and New Jersey delegated the relevant regulatory authority. "Interstate compacts are construed as contracts under the principles of contract law." *Tarrant Reg'l Water Dist. v. Herrmann*, 569 U.S. 614, 628 (2013). So we look to "the express terms of the Compact as the best indication of the intent of the parties." *Wayne Land*, 894 F.3d at 527 (quoting *Tarrant*, 569 U.S. at 628).

As the District Court held, the Compact's text unambiguously cedes Pennsylvania's sovereign authority over building safety regulations. It grants the Commission the power "[t]o acquire, own, use, lease, operate, and dispose of real property and interest in real property, and to make improvements thereon," as well as power over "all other matters in connection with[] any and all improvements or facilities which it may be authorized to own, construct, establish, effectuate, maintain, operate or control." Pub. L. No. 74-411, § 9, 49 Stat. at 1060. In defining real property, the Compact includes "structures," *id.* at 1062, *i.e.*, "[t]hat which is built or constructed; an edifice or building of any kind," *see Structure*, BLACK'S LAW DICTIONARY (3d ed. 1933). Thus, the Compact grants the Commission the authority to acquire property (the Scudder Falls site), the ability to make

12

improvements upon the property (construction of the Administration Building), and the power over "all other matters in connection with . . . [its] facilities" (the operation and maintenance of elevators).

Pennsylvania (and New Jersey) also ceded sovereign authority to the Commission when they authorized it, in the broadest terms, "[t]o exercise *all other powers* . . . which may be reasonably necessary or incidental to the effectuation of its authorized purposes . . . *except* the power to levy taxes." Pub. L. No. 74-411, § 9, 49 Stat. at 1060 (emphasis added). As the District Court noted, "[t]he ordinary meaning of 'all other powers' does not provide a limitation retaining the Commonwealth's police power." *Del. River*, 2020 WL 1470856, at *13. Finally, the fact that Pennsylvania and New Jersey expressly reserved their taxing power—but not other powers—supports the District Court's conclusion that they did not intend to retain the authority to enforce building safety regulations.

\*     \*     \*

For the reasons stated, we hold Pennsylvania ceded its sovereign authority to enforce its building safety regulations as to the Scudder Falls Administration Building. We will therefore affirm the District Court's declaratory judgment against the Secretary of the Pennsylvania Department of Labor and Industry.